IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHANDALYNN HAMILTON ) | |
| o/b/o K.L.H., a minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:13-cv-883-WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Shandalynn Hamilton, on behalf of her minor daughter K.L.H., applied for supplemental security income ("SSI") under Title XVI of the Social Security Act. The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which he found K.L.H. not disabled since the date the application was filed. The Appeals Council denied Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all

---

[1]   Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to

proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 8); Def.'s Consent to Jurisdiction (Doc. 9). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 includes the standard for defining child disability under the Social Security Act. *See* PUB. L. NO. 104-193, 110 Stat. 2105, 2188 (1996). The statute provides that an individual under 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i) (1999).

The sequential analysis for determining whether a child claimant is disabled is as follows:

> 1. If the claimant is engaged in substantial gainful activity, she is not disabled.
>
> 2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, she is not disabled.

---

Social Security matters were transferred to the Commissioner of Social Security.

>3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, and Appendix 1.  If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997); *see also Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004).

>In determining whether an impairment functionally equals a listed impairment, the ALJ must consider the child's ability to function in six different "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) "caring for yourself;" and (6) health and physical well-being.  If the child has "marked" limitations in two of these domains, or an "extreme" limitation in any one domain, then his impairment functionally equals the listed impairments, and he will be found to be disabled.  A "marked" limitation is one that seriously interferes with the child's ability to initiate, sustain, or complete activities.  An extreme limitation is one that "very seriously" interferes with the child's ability to initiate, sustain, or complete activities.

*Coleman ex rel. J.K.C. v. Comm'r of Soc. Sec.*, 454 F. App'x 751, 752 (11th Cir. 2011) (internal citations omitted).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal, or functionally equivalent in severity, to a listed impairment, the child is not disabled.  *See* 20 C.F.R. § 416.924(d)(2) (1997).  In reviewing the Commissioner's decision, the court asks only whether the ALJ's findings concerning the steps are supported by substantial evidence.  "Under this limited standard of review, [the court] may not make fact-findings, re-weigh the evidence, or substitute

3

[its] judgment for that of the [ALJ]." *Bryant v. Soc. Sec. Admin.*, 478 F. App'x 644, 645 (11th Cir. 2012) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "Where substantial evidence supporting the ALJ's fact findings exists, [the court] cannot overturn those findings even if other substantial evidence exists that is contrary to the ALJ's findings." *Id*. (citing *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991)); *see also McMillian, o/b/o A.T.F. v. Comm'r of Soc. Sec.*, 521 F. App'x 801, 802 (11th Cir. 2013) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) ("'Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence.'").

## III.  ADMINISTRATIVE PROCEEDINGS

K.L.H. was ten years old at the time of the hearing.  *See* Tr. 54.  Following the administrative hearing, the ALJ found at Step One that K.L.H. had not engaged in substantial gainful activity at any time since the application date.  Tr. 21.  The ALJ found at Step Two that K.L.H. has the severe impairments of "attention deficit hyperactivity disorder [ADHD] and borderline intellectual functioning [BIF] [.]"  *Id.*  Next, the ALJ concluded under Step Three that these impairments do not meet or medically equal in severity the criteria for any impairment in the Listing of Impairments.  *Id.*  The ALJ further found that K.L.H.'s impairments do not functionally equal in severity any such listings because K.L.H. has either less than marked or no limitations in each of the six

domains of function.  *Id.* at 26-31.  Consequently, the ALJ found the claimant was not disabled.  Tr. 31.

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents four issues for this court's consideration in review of the ALJ's decision:  (1) whether "the ALJ erred as a matter of law by failing to find that K.L.H. meets Listing 112.05D"; (2) whether "the ALJ committed reversible error by failing to give any weight to the opinion evidence of Sarah Anderson, MS., LPC"; (3) whether "the ALJ committed reversible error in failing to address the medical source opinions of Dr. Shakir Meghani and Dr. Esiri Esin as to K.L.H.'s ADHD"' and (4) whether "the ALJ erred as a matter of law by failing to explain why the medical source testimony of Dr. Fernando Lopez was discredited."  Pl.'s Br. (Doc. 12) at 1.

## V. DISCUSSION

### A. The ALJ's Finding that K.L.H. Did Not Meet Or Equal Listing 112.05.

Plaintiff first argues that "the ALJ erred at step three of the sequential evaluation process by failing to find that K.L.H.'s impairments meet" the Listing for Intellectual Disability, 112.05.  Pl.'s Br.  (Doc. 12) at 4.  Plaintiff asserts that K.L.H. meets the requirements of Listing 112.05(D) because she obtained a full scale IQ score of 69 and, in addition, she has the severe impairments of ADHD and BIF, which suffice as "a physical or other mental impairment imposing an additional and significant limitation of function."  *See* Pl.'s Br. (Doc. 12) at 9-11.  Plaintiff further contends that the ALJ

erroneously concluded that K.L.H. did not meet Listing 112.05(D) based, in part, on his finding that "K.L.H.'s adaptive functioning deficits were not consistent with mental retardation" which, she maintains, "is not a requirement of Listing 112.05." *Id.* at 10.

The listing for intellectual disability, 20 C.F.R., pt. 404, subpt. P, app. 1, § 112.05,[2] contains an introductory paragraph which states that an intellectual disability is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R., pt. 404, subpt. P, app. 1, § 112.05. Further, the introductory paragraph states that "[t]he required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied." *Id.* Thus, if a plaintiff's impairment satisfies the diagnostic description in the introductory paragraph (i.e. significantly subaverage general intellectual functioning and deficits in adaptive functioning), the ALJ may consider any one of the six paragraphs to determine whether the claimant's intellectual disability is sufficiently severe to meet the Listing. *See, e.g., Jordan v. Comm'r of Soc. Sec.*, 470 F. App'x 766, 768 (11th Cir. 2012) ("As both the Listings and our cases make plain, a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05 or 112.05.").

---

[2] The 2013 version of the Listing of Impairments replaced the term "Mental Retardation" with "Intellectual Disability." *Compare* 20 C.F.R. § 404, Subpt. P, App. 1, Listing 112.05 (2013) *with id.* (2012).

6

In this case, the ALJ found that K.L.H. did not meet Listing 112.05 because evidence in the record indicated to the ALJ that K.L.H.'s "adaptive functioning is not consistent with mental retardation" and, moreover, K.L.H. had been diagnosed only with BIF rather than mental retardation. Tr. 21. Specifically, the ALJ noted evidence that K.L.H.'s "cognitive functioning was only mildly impaired," that K.L.H. is able to "read simple words, spell most 3-4 letter words and print her name and some letters." *Id.* In addition, the ALJ noted evidence indicating that K.L.H. is often capable of doing school work but sometimes struggles to pay attention. *Id.* The ALJ also noted that K.L.H.'s report card for the 2011-2012 school year indicated that K.L.H. did not receive any failing grades, and that she had, in fact, received "fair or better" grades in six of the nine subject areas. *Id.* In short, then, the ALJ determined that K.L.H. did not satisfy the diagnostic description of intellectual disability—meaning that Plaintiff failed to show that K.L.H. has "significantly subaverage general intellectual functioning with deficits in adaptive functioning"—and therefore did not proceed to determine whether any purported intellectual disability of K.L.H. was sufficiently severe as demonstrated by subparts A through F of Listing 112.05.

Plaintiff first asserts that the ALJ erred because evidence in the record, including statements given by Plaintiff, K.L.H.'s teacher, and a counselor associated with the physicians treating K.L.H. for ADHD, indicates that K.L.H. suffers from "significantly subaverage general intellectual functioning with deficits in adaptive behavior" because,

7

*inter alia*, she has some difficulties with understanding math, language, and reading comprehension, and has problems with "Acquiring and Using Information." Pl.'s Br. (Doc. 12) at 5-6.  Furthermore, it appears that Plaintiff believes the ALJ erred because of his reliance on the fact that K.L.H. was diagnosed with borderline intellectual functioning rather than mental retardation.  *Id.* at 8 ("Listing 112.05 does not state that one must suffer from mental retardation . . . ."); *id.* at 10 ("In the case at bar, the ALJ improperly considered that K.L.H.'s adaptive functioning deficits were not consistent with mental retardation when such is not a requirement of Listing 112.05."); *id.* at 11 ("In this case, the ALJ confuses 'mild mental retardation' versus 'borderline intellectual functioning' in the consideration of adaptive functioning.").

As this court discussed above, even if the evidence in the record preponderates in favor of a finding that K.L.H. meets the Listing, this court cannot reverse the ALJ's decision so long as it is supported by substantial evidence.  In this case, substantial evidence supports the ALJ's decision, including, namely, a consultative examination report by a speech language pathologist which found that K.L.H.'s "comprehensive and expressive language skills are within normal limits" (Tr. 206), and a consultative examination by a licensed psychologist, Dr. Jacobs, who, despite that K.L.H.'s IQ score placed her in the "upper extreme of the mild range of mental retardation," diagnosed K.L.H. with BIF, rather than mental retardation, based upon his examination of K.L.H. and his consideration of the medical evidence in the record (Tr. 210-11).  Likewise, and

as noted by the ALJ, K.L.H.'s educational records also indicate better than "significantly subaverage general intellectual functioning" and that she does not have the requisite deficits in adaptive functioning. Apart from K.L.H.'s generally positive grades[3] in the third grade (*see* Tr. 184), evidence in the record indicates that K.L.H. can read and spell simple words (Tr. 138), is able to maintain friendships with others (Tr. 138), gets along with her mother, siblings, and teachers (Tr. 138), is able to clean and dress herself (Tr. 141), performs chores around the house (Tr. 141), enjoys arts and crafts projects (Tr. 142), enjoys school work when she does well and understands assignments (Tr. 145), and is able to work independently at times (Tr. 145). K.L.H.'s most recent academic records at the time of the ALJ's decision, which followed-up on the generally positive grades she received in third grade, included her fourth grade "Individualized Education Program" (IEP). The IEP reinforces the ALJ's conclusion that K.L.H.'s intellectual and adaptive functioning are not consistent with disability under Listing 112.05:

> [K.L.H.] is a very soft spoken girl who gets along well with her peers. She is eager to learn and likes her teachers. She becomes very excited when she "gets it" or is able to complete a task independently. [K.L.H.] is able to recall most vocabulary words independently when she has been introduced and retaught each week. She remembers most math processes when applying math concepts, but often will make careless mistakes. Extra practice with those basic concepts should correct this.

Tr. 186.

---

[3] As the ALJ noted, K.L.H. received two As, two Bs, two Cs, and three Ds during the 2011-2012 school year. K.L.H. received Ds in Reading, Math, and Language Arts. However, it should be noted that, despite her final grade of D, in both Math and Language Arts K.L.H

Given this body of evidence, the court finds that the ALJ's conclusion that K.L.H. does not suffer from "significantly subaverage general intellectual functioning with deficits in adaptive behavior" is supported by substantial evidence. *See Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x 748, 749 (11th Cir. 2011) (finding that, "based on the record, the ALJ could have found that Whymss did not have deficits in adaptive functioning" because the claimant "took regular classes, was able to complete his work, and helped others with school projects," his "grooming and hygiene were normal" and he "was able to follow simple commands and engage in social judgment and deductive reasoning").[4] Accordingly, the ALJ did not err in finding that K.L.H. does not meet Listing 112.05.[5]

---

actually received Cs in three of the four grading periods during the school year. Tr. 184.

[4] Contrary to Plaintiff's apparent belief, it was not erroneous for the ALJ to rely upon Dr. Jacobs' diagnosis of BIF, and the lack of any diagnosis of mental retardation, in determining that K.L.H. did not meet Listing 112.05. Again, as the court noted above, at the time of the ALJ's decision, Listing 112.05 was titled, and was therefore explicitly concerned with, "Mental Retardation." Only in 2013 was the Listing retitled "Intellectual Disability." As such, and contrary to Plaintiff's argument that Listing 112.05 does not require a showing of mental retardation, courts in this Circuit have routinely recognized that a failure to diagnose a claimant "mentally retarded" was highly relevant in the ALJ's assessment of whether the claimant met Listing 112.05. *See, e.g., Henderson ex rel. N.T. v. Astrue*, 401 F. App'x 449, 450 (11th Cir. 2010) (finding ALJ was justified in discrediting a full scale IQ score of 67 because "the examiners administering the IQ tests specifically determined that, despite the results, a diagnosis of mental retardation was 'not warranted,'" and that, therefore, the ALJ's conclusion that the claimant did not meet Listing 112.05D was supported by substantial evidence); *Turberville ex rel. Rowell v. Astrue*, 316 F. App'x 891, 893 (11th Cir. 2009) (concluding that opinion of an examining doctor that claimant's "IQ and achievement testing were more suggestive of a learning disability than mental retardation" supported ALJ's finding that claimant did not meet Listing 112.05). *See also Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 984-85 (11th Cir. 2013) (finding that substantial evidence supported the ALJ's decision that claimant did not satisfy the analogous adult disability Listing 12.05 where even non-examining doctors who completed mental RFC assessments opined that claimant's "mental impairment was more

**B.     The ALJ's Failure To Give Any Weight to "Other Source" Opinion.**

Plaintiff next argues that the ALJ "failed to fully consider the 'other source' testimony of Sarah Anderson, MS LPC, K.L.H.'s counselor, as to the extent of K.L.H.'s ADHD and the functional limitations imposed thereby."  Pl.'s Br. (Doc. 12) at 11.  Ms. Anderson, a counselor associated with Southeast Psychiatric Services, completed a questionnaire offering her opinion about the limitations imposed on K.L.H. by her ADHD.  Tr. 243-45.  Ms. Anderson opined that, in some areas, K.L.H. suffers marked limitations in her functional abilities (such as "age-appropriate personal functioning" and "maintaining concentration, persistence, or pace"), and she furthermore appears to indicate her belief that K.L.H. is "Limited Markedly" in social and personal functioning and in four of the six domains of functioning.[6]  Tr. 243-45.  However, Ms. Anderson also

---

consistent with borderline intellectual functioning than mild mental retardation"); *Jordan v. Comm'r of Soc. Sec. Admin.*, 470 F. App'x 766, 768-69 (11th Cir. 2012) (finding that examining psychologist's diagnosis of BIF substantially supported ALJ's determination that claimant did not meet Listing 12.05 because diagnosis of BIF "is mutually exclusive of mental retardation"); and *Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813, 815 (11th Cir. 2009) ("Substantial evidence supports the ALJ's denial of disability benefits because Harris did not meet the requirements of Listing 12.05.  He was never diagnosed with mental retardation, only borderline intellectual functioning.").

[5]     As best the court can tell, apart from her argument that the ALJ erred in failing to find that K.L.H. meets Listing 112.05D, Plaintiff does not present any argument that the ALJ further erred in finding that K.L.H. does not functionally equal Listing 112.05.  Indeed, after reviewing the evidence in the record, the ALJ discussed each of the six relevant functional domains and concluded that K.L.H. has less than marked or no limitations in each of the domains.  Tr. 26-31.  The court has conducted its own review of this aspect of the ALJ's decision and concludes, to the extent a challenge could be construed or implied in Plaintiff's brief, the ALJ's findings are supported by substantial evidence in the record.

[6]     Confusingly, the questionnaire completed by Ms. Anderson does not appear to permit the person completing the form to indicate different degrees of limitation for any of the domains of functioning listed on the form.  Rather, under the heading "General Limitations caused by mental

expressed some reservations about her opinions given the few times she had actually seen K.L.H. See Tr. 245 ("Filled this out to the best of my knowledge. [K.L.H.] has only been seen 5-27-11, 8-8-11, 8-22-11 and I did new intake on 6-11-12 and plan on counseling services continuing bi-weekly.").

Plaintiff concedes that Ms. Anderson's questionnaire is not "acceptable" medical source evidence. She maintains, however, that it is "other source" evidence within the meaning of 20 C.F.R. § 404.1513(d) and should have therefore been considered by the ALJ. The ALJ plainly reviewed and summarized Ms. Anderson's opinion in his decision. Tr. 24. Although, the ALJ does not clearly indicate what weight he have Ms. Anderson's opinion, it is evident that he did not afford the opinion substantial weight because he did not conclude that K.L.H. is markedly limited with respect to any of the six domains of functioning, including those for which Mr. Anderson had opined some marked limitation. As such, any failure by the ALJ to explicitly state that he was not affording Ms. Anderson's opinion less than controlling weight, or that he was rejecting her opinion altogether, does not warrant remand because the court is plainly able to "follow the adjudicator's reasoning." *See* SSR 06-03p ("the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the

---

illness in childhood," the form instructs the examiner to check the degree of impairment (consisting of "None," "Mildly," "Limited," "Limited Moderately," "Limited Markedly," and "Extremely Limited") from a single cluster of those terms at the top of the page and then simply lists the domains and provides a brief explanation for each. Tr. 245. To the extent this form, by design, is not intended to allow the examiner to recognize that a subject might be more limited with respect to some domains than with others, it is of little evidentiary value in any faithful

discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning"); *see also De Olazabal v. Soc. Sec. Admin., Com'r*, 579 F. App'x 827, 832 (11th Cir. 2014). Accordingly, the court finds that the ALJ's failure to explicitly state the weight he afforded to Plaintiff's "other source" evidence does not warrant reversal of the ALJ's decision.

### C. The ALJ's Failure to Address Medical Source Opinions.

Plaintiff next contends that "the ALJ failed to consider the medical source testimony of Dr. Shakir Meghani, M.D., and Dr. Esiri Esin, M.D., of Southeast Psychiatric Services, who treated K.L.H. for [ADHD] from April 1, 2011, to June 26, 2012." Pl.'s Br. (Doc. 12) at 13. Plaintiff states that "[a]s a result of this ongoing treatment, K.L.H. was prescribed Zyprexz (olanzapine) 5mg, Adderall 10mg, and Amphetamine Salts 10mg for the treatment of ADHD." *Id.* at 14. Plaintiff does not identify or describe any specific treating source opinion from Drs. Meghani or Esin which she faults the ALJ for failing to consider. Rather, she simply describes the duration of the treating sources' relationship with K.L.H. and concludes that the "ALJ failed to consider or explain the relative weights given to the medical source opinions of these two treating physicians of K.L.H. and thereby committed reversible error." *Id.*

Plaintiff has failed to identify any opinion of Drs. Meghani or Esin which is in conflict with the ALJ's decision. According to Plaintiff, both doctors treated K.L.H. for

---

assessment of the subject's functional limitations.

13

ADHD. The ALJ found K.L.H.'s ADHD to be a severe impairment. Tr. 21. There is no opinion evidence in the record from these doctors which suggests an intellectual or functional limitation greater than that found by the ALJ.[7] Moreover, the ALJ explicitly referred to the treatment records of Southeast Psychiatric Services from "February 25, 2011 to June 26, 2012," Tr. 23-24, and specifically referenced Dr. Meghani's treatment note of October 21, 2011, which stated that K.L.H. "was doing fine on her medications with no side effects." Tr. 24. Thus, it is clear from the ALJ's decision that medical records evidencing the treatment of K.L.H. by Drs. Meghani and Esin were considered by the ALJ in reaching his decision. Plaintiff has failed to identify any opinion evidence from these treating sources which the ALJ failed to properly recognize and weigh in reaching his decision.

### D. The ALJ's Failure to Explain the Rejection of Dr. Lopez's Opinion.

Plaintiff's final claim is as follows:

> In the case at bar, the ALJ discredited the medical source opinion of Dr. Lopez's diagnosis of "AXIS I: ADHD (?), Delayed develop disorder (?), AXIS II: Borderline intelligence (?), AXIS III: None" (R. 238). The notation of (?) in the ALJ's decision serves to discredit and nullify the diagnosis of Dr. Lopez at two different places in the ALJ's decision (R. 21, R. 23, R. 27, and R. 28). . . . The ALJ failed to explain or articulate the weight assigned to the medical source opinion testimony which was followed by the "(?)" which constitutes reversible error.

---

[7] Indeed, the last treatment note in the records from Southeast Psychiatric Services, dated June 26, 2012, was authored by Dr. Esin and indicates that K.L.H. was "doing well on meds" with "good sleep and appetite." Tr. 225. Dr. Esin found that K.L.H. was normal in behavior, fully alert, oriented as to time, had a good attention span, goal directed thought process, appropriate affect, good memory, good impulse control, and average judgment or insight. *Id.*

Pl.'s Br. (Doc. 12) at 14.

Dr. Lopez completed a Psychiatric History of K.L.H. on February 25, 2011, at the outset of K.L.H.'s treatment history with Southeast Psychiatric Services. Tr. 238. In pertinent part, each of Dr. Lopez's diagnoses is accompanied by a question mark in parentheses next to the diagnosis. *See id.* Hence, where the ALJ referenced Dr. Lopez's diagnoses, he too included the question mark in parentheses. *See* R. 21, 23-24. The court fails to see how the ALJ could have "discredit[ed] and nullif[ied]" Dr. Lopez's opinion merely by including the question mark which Dr. Lopez himself included in his diagnoses. Plaintiff's argument is especially confounding considering that the ALJ indeed found that K.L.H. has the severe impairments of ADHD and BIF, which were both diagnosed by Dr. Lopez. Tr. 21. Moreover, the ALJ plainly relied upon Dr. Lopez's diagnosis of BIF when he articulated the basis for his finding that K.L.H. did not meet Listing 112.05. *See* Tr. 21 ("Even Dr. Lopez did not diagnosis mental retardation but borderline intelligence (?)."); *id.* at 27 (same). Finally, apart from Plaintiff's apparent confusion about the ALJ's actual treatment of Dr. Lopez's opinion, there is no portion of Dr. Lopez's Psychiatric History which conveys his belief that K.L.H. is more intellectually or functionally limited than what was articulated by the ALJ. Accordingly, the ALJ did not discredit Dr. Lopez's opinion in any material sense, and he did not err in failing to articulate the basis for any supposed rejection of such opinion.

15

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 12th day of December, 2014.

> /s/ Wallace Capel, Jr.
> WALLACE CAPEL, JR.
> UNITED STATES MAGISTRATE JUDGE